United States District Court
For the Northern District of California

1

2

3                                                    *E-FILED ON 7/25/06*

4

5

6

7                              NOT FOR CITATION

8             IN THE UNITED STATES DISTRICT COURT

9          FOR THE NORTHERN DISTRICT OF CALIFORNIA

10                         SAN JOSE DIVISION

11   UNITED STATES *ex rel.* DONNA M.            No. C05-01962 HRL
     McLEAN and THE STATE OF CALIFORNIA
12   *ex rel* DONNA M. McLEAN,
                                                 **ORDER DENYING DONNA M.**
13              Plaintiffs,                       **MCLEAN'S SPECIAL MOTION TO**
                                                 **STRIKE COUNTERCLAIMS**
14        v.                                      **PURSUANT TO CALIFORNIA CODE OF**
                                                 **CIVIL PROCEDURE § 425.16**
15   THE COUNTY OF SANTA CLARA, THE
     DEPARTMENT OF CHILDREN AND
16   FAMILY SERVICES OF SANTA CLARA
     COUNTY, KENNETH BORELLI,                    **[Re: Docket No. 30]**
17   LAWRENCE GALLEGOS, EPIFANIO ("J.R.")
     REYNA, TANYA BEYERS, DR. DEE
18   SCHAFFER, DR. TOMMIJEAN THOMAS,
     DR. RICHARD PERILLO and DOES 1-100,
19
                Defendants.
20   _____/

21   COUNTY OF SANTA CLARA,

22              Counter-claimant,

23        v.

24   DONNA M. McLEAN and DOES 1-100,

25              Counter-defendants.
     _____/
26

27        On July 18, 2006, this court heard the "Special Motion to Strike Counterclaim Pursuant

28   to California Code of Civil Procedure § 425.16" filed by relator and counter-defendant Donna

M. McLean ("McLean").  Defendant and counter-claimant County of Santa Clara ("County")

opposed the motion.  The County was given leave to, and did, submit supplemental briefing on

the matter.  Upon consideration of the papers filed by the parties, as well as the arguments of

counsel, this court denies the motion.[1]

## I.  BACKGROUND

On May 12, 2005, McLean filed this qui tam action under seal pursuant to the federal

False Claims Act (31 U.S.C. § 3729, *et seq.*) and the California False Claims Act (Govt. Code §

12651, *et seq.*).  She claims that there is a pattern of fraud and corruption in the Santa Clara

County Department of Children and Family Services.  In essence, the complaint alleges that

defendants have invented fictional children for the purpose of overbilling the state and federal

governments.  On February 27, 2006, following their investigation into the allegations, the

United States and the State of California declined to intervene in this action.  This court

subsequently lifted the seal on the complaint and ordered that it be served upon the defendants.

Several defendants, including the County, have answered the complaint.  The County also filed

several counterclaims against McLean for breach of contract, breach of the implied covenant of

good faith and fair dealing and for declaratory relief.  Those counterclaims now form the basis

of the dispute presented by the instant motion to strike.

The County and McLean are no strangers in litigation, and the record presented

indicates that McLean (along with several members of her family) previously filed no less than

three separate lawsuits against the County and several of its employees (a couple of whom are

also named defendants in the instant action).  Two of those prior lawsuits were filed in this

court; the other action was filed in Santa Clara County Superior Court.  Briefly stated, those

earlier lawsuits concerned alleged violation of constitutional rights, fraud, negligence and

intentional infliction of emotional distress in connection with the removal of McLean's children

from her home and events which allegedly occurred during the juvenile dependency

proceedings involving McLean's children.

---

[1]     Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, McLean and the
County have expressly consented that all proceedings in this matter may be heard and finally
adjudicated by the undersigned.

United States District Court

For the Northern District of California

1    In 2004, the parties executed a settlement agreement ("2004 Settlement Agreement") in

2    which they agreed to resolve those three prior lawsuits.[2]  The parties agreed to release any and

3    all claims that they may have against one another and further agreed that:

4        • "the term 'any and all claims' shall be interpreted liberally to
           preclude any further disputes, litigation, or controversy between
5          the parties";

6        • "they will forever refrain from instituting, prosecuting, maintaining,
           proceeding on, assisting or providing assistance or advising to be
7          commenced against any Released Party any action or proceeding that
           arises out of, or is or may be, in whole or in part, based upon, related
8          to, or connected with the subject matter of this Agreement"; and

9        • "the release contained in this Agreement is a complete defense to any
           action or other proceeding against any Released Party existing at the
10         present time or in the future arising from the subject matter of this
           Agreement."

11

12   (Kiniyalocts Affid., Ex. 1 (Counterclaim Ex. A at pp. 6-7)).  Additionally, the parties agreed to

13   a "hold harmless" clause which provides:

14       The Fryer Plaintiffs agree to defend, indemnify, and hold harmless
         the County Defendant Released Parties from any and all known claims,
15       demands, causes of action, expenses, losses, liabilities, and damage of any
         kind or character, including attorneys' fees and court costs arising out of
16       or in any way connected with the Actions or other proceedings brought by or
         prosecuted by or for the benefit or on the initiative of any Fryer Plaintiff
17       based upon the subject matter of this Agreement and, in any such action, this
         Agreement may be pleaded by the County Defendant Released Parties as a
18       complete defense or asserted by way of cross-complaint, counter claim or
         cross claim.

19

20   (*Id*. at p. 8).

21       In its counterclaims, the County contends that McLean (1) breached the 2004 Settlement

22   Agreement by filing the instant qui tam action and (2) induced the County to enter the 2004

23   Settlement Agreement by falsely agreeing to release the County and its employees from all

24   liability for future actions.  The County seeks a declaration that McLean breached the 2004

25   Settlement Agreement and requests damages, as well as its fees and costs.

26

27   _____

28       [2]    At the time the 2004 Settlement Agreement was executed, McLean was
     known as Donna Fryer.

3

**United States District Court**
For the Northern District of California

1    Pursuant to California Code of Civil Procedure § 425.16, McLean now moves to strike

2  the County's counterclaims as a SLAPP (strategic lawsuit against public participation).

3                              **II.  DISCUSSION**

4    California's anti-SLAPP statute, Code of Civil Procedure § 425.16, provides, in relevant

5  part:

6          A cause of action against a person arising from any act of that
           person in furtherance of the person's right of petition or free
7          speech under the United States or California Constitution in
           connection with a public issue shall be subject to a special motion
8          to strike, unless the court determines that the plaintiff has
           established that there is a probability that the plaintiff will prevail
9          on the claim.

10  CAL. CODE CIV. PROC. § 425.16(b)(1).  An "act in furtherance of a person's right of petition or

11  free speech under the United States or California Constitution in connection with a public issue"

12  is defined by the statute to include:

13      (1)    any written or oral statement or writing made before a legislative,
                executive, or judicial proceeding, or any other official proceeding
14              authorized by law;

15      (2)    any written or oral statement or writing made in connection with an
                issue under consideration or review by a legislative, executive, or
16              judicial body, or any other official proceeding authorized by law;

17      (3)    any written or oral statement or writing made in a place open to the
                public or a public forum in connection with an issue of public interest;
18

19      (4)    or any other conduct in furtherance of the exercise of the
                constitutional right of petition or the constitutional right of free
20              speech in connection with a public issue or an issue of public interest.

21  *Id.*, § 425.16(e).  The statute is to be broadly construed.  *Id.*, § 425.16(a).  Although anti-SLAPP

22  motions are based upon a state statute, such motions are available to litigants in federal court.

23  *Thomas v. Fry's Electronics, Inc.*, 400 F.3d 1206 (9th Cir. 2005).

24    The resolution of an anti-SLAPP motion requires the court to engage in a two-step

25  analysis.  "First the court decides whether the defendant has made a threshold showing that the

26  challenged cause of action is one arising from protected activity."  *Navellier v. Sletten*, 29

27  Cal.4th 82, 52 P.3d 703, 708 (2002).  "'A defendant meets this burden by demonstrating that the

28  act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16,

4

1    subdivision (e).'" *Id.* (quoting *Braun v. Chronicle Publishing Co.*, 52 Cal.App.4th 1036, 1043,

2    61 Cal. Rptr.2d 58 (1997)).  "If the court finds that such a showing has been made, it must then

3    determine whether the plaintiff has demonstrated a probability of prevailing on the claim." *Id.*

4    "Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute – i.e., that arises

5    from protected speech or petitioning *and* lacks even minimal merit – is a SLAPP, subject to

6    being stricken under the statute." *Id.* at 708.  "In making its determination, the court shall

7    consider the pleadings, and supporting and opposing affidavits stating the facts upon which the

8    liability or defense is based." CAL. CODE CIV. PROC. § 425.16(b)(2).

9    **A.**    **"Arising From Protected Activity"**

10          McLean, as the counter-defendant on the County's counterclaims, bears the initial

11   burden of demonstrating that the counterclaims arise from protected activity.  The anti-SLAPP

12   statute includes no intent-to-chill requirement, and the County's subjective intent in asserting its

13   counterclaims is irrelevant.  *See Equilon Enterprises LLC v. Consumer Cause, Inc.*, 29 Cal.4th

14   53, 52 P.3d 685, 688 (2002).  "Consequently, a defendant who meets its burden under the

15   statute of demonstrating that a targeted cause of action is one 'arising from' protected activity

16   (§ 425.16, subd. (b)(1)) faces no additional requirement of proving the plaintiff's subjective

17   intent."  *Cotati v. Cashman*, 29 Cal.4th 69, 52 P.3d 695, 699 (2002).  But the mere fact that an

18   action was filed after, or triggered by, protected activity does not mean that the action arose

19   from that activity for purposes of the anti-SLAPP statute.  *Cotati*, 52 P.3d at 700.  Rather, "[i]n

20   the anti-SLAPP context, the critical consideration is whether the cause of action is *based on* the

21   defendant's protected free speech or petitioning activity."  *Navellier*, 52 P.3d at 709.

22          In the instant case, McLean argues that, under *Navellier*, the County's counterclaims

23   meet the "arising from" requirement.  This court agrees.  In *Navellier*, the plaintiffs sued the

24   defendant in state court for fraud, claiming that he misrepresented his intent to be bound by a

25   partial release he executed in connection with the plaintiffs' earlier-filed federal lawsuit.  They

26   also alleged that the defendant breached the release agreement by filing counterclaims against

27   them in that federal action.  *Navellier*, 52 P.3d at 706-07.  Defendant filed a motion to strike

28   plaintiffs' claims under the anti-SLAPP statute.  The trial court denied the motion, and the court

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1   of appeals affirmed on the ground that plaintiffs' claims did not "arise from" protected activity.

2   On appeal, the California Supreme Court reversed and held that plaintiffs' claims were subject

3   to the anti-SLAPP statute because the defendant's negotiation and execution of the release

4   involved "statement[s] or writing[s] made in connection with an issue under consideration or

5   review by a . . . judicial body" and his arguments to the federal court as to the release's validity

6   were "statement[s] or writing[s] made before a . . . judicial proceeding." *Id.* at 709 (internal

7   quotations and citations omitted).

8          Similarly, here, the County's counterclaims are based upon McLean's alleged bad faith

9   conduct in inducing the County to enter into the 2004 Settlement Agreement and subsequently

10  filing the instant qui tam action.  The County also alleges that in filing the instant complaint,

11  McLean violated court orders as to the use of juvenile dependency documents.  Further, it

12  claims that McLean filed the instant action without justification to publicly disparage the

13  County and its employees in retaliation for the institution of dependency proceedings on behalf

14  of her children.  Essentially, the County complains of McLean's alleged negotiation, execution

15  and repudiation of the 2004 Settlement Agreement and seeks to hold her liable for the act of

16  filing the instant quit tam lawsuit itself.  McLean's instant lawsuit (brought on behalf of the

17  United States and the State of California) is a "statement or writing made before a . . . judicial

18  proceeding" (Cal. Code Civ. Proc. § 425.16(e)(1)), a "written or oral statement or writing made

19  in a place open to the public or a public forum in connection with an issue of public interest"

20  (*id.*, § 425.16(e)(3)) and "conduct in furtherance of the exercise of the constitutional right of

21  petition . . . in connection with a public issue."  (*id.*, § 425.16(e)(4)).  Accordingly, this court

22  concludes that McLean has met her burden in showing that the County's counterclaims arise

23  from protected activity under the anti-SLAPP statute.

24         The County contends that *Navellier* is factually distinguishable because in that case, two

25  of the counterclaims at issue (i.e., for contribution and indemnity) were specifically excluded by

26  the parties' release agreement.  *See Navellier*, 52 P.3d at 707 n.4.  However, there is no

27  indication that the California Supreme Court's analysis was limited to those unreleased claims;

28

United States District Court

For the Northern District of California

1    and, it appears that all of the defendant's previously asserted counterclaims – including those

2    which allegedly were encompassed by the parties' release – were at issue.  *See id*. at 709-10.

3           It is true, as the County notes, that not all counterclaims are subject to the anti-SLAPP

4    statute.  *See Cotati*, 52 P.3d at 700 ("To construe 'arising from' in section 425.16 subdivision

5    (b)(1) as meaning 'in response to'. . . would in effect render all cross-actions potential SLAPPs.

6    We presume the Legislature did not intend such an absurd result.").  However, *Cotati* is

7    distinguishable from the situation under consideration here.  *Cotati* concerned a dispute

8    between mobilehome park owners and the City of Cotati over the constitutionality of an

9    ordinance establishing mobilehome park rent control.  The mobilehome park owners filed a

10   federal action against the city, seeking a declaration that the ordinance was unconstitutional.

11   The city, in turn, filed a declaratory relief action in state court, seeking a declaration that the

12   ordinance was constitutional.  *Id*. at 697-98.  The California Supreme Court held that the city's

13   lawsuit was not subject to dismissal under the anti-SLAPP statute because it did not "arise

14   from" the park owners' federal action.  That is, the basis for the city's challenged action was the

15   actual controversy over the constitutionality of the ordinance, and not the park owners' federal

16   lawsuit itself.  *Id*. at 702-03.  In the instant case, by contrast, the County's counterclaims are

17   based upon McLean's act of filing of the qui tam complaint.

18          Nevertheless, the County maintains that McLean waived the protection of the anti-

19   SLAPP statute when she executed the 2004 Settlement Agreement.  It asserts that McLean was

20   aware of the alleged fraudulent billing which forms the basis of the instant lawsuit when she

21   executed the 2004 Settlement Agreement because she acknowledges that she learned of the

22   alleged fraud from discovery she obtained in her previous lawsuits against the County.  (*See*

23   Mot. to Strike at 4:6-10).  Further, the County points out that *Navellier* provides that "a

24   defendant who in fact has validly contracted not to speak or petition has in effect 'waived' the

25   right to the anti-SLAPP statute's protection in the event he or she later breaches that contract."

26   *Navellier*, 52 P.3d at 712.  As such, the County argues that the anti-SLAPP statute is

27   inapplicable to the type of counterclaims asserted in the instant action.

28

United States District Court

For the Northern District of California

1    While the California Supreme Court concluded that the anti-SLAPP statute does not

2    immunize a party from being sued for the breach of a release or other types of contracts

3    affecting speech, it also declined to hold that the statute is inapplicable to such claims.

4    *Navellier*, 52 P.3d at 711 ("Nothing in the statute itself categorically excludes any particular

5    type of action from its operation, and no court has the power to rewrite the statute so as to make

6    it conform to a presumed intention which is not expressed.") (internal quotations and citations

7    omitted).  In determining whether a challenged action arises from protected activity, the Court

8    stated that "[t]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause

9    of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability – and

10   whether that activity constitutes protected speech or petitioning."  *Id*.  It reasoned that "[t]he

11   Legislature's inclusion of a merits prong to the statutory SLAPP definition . . . preserves

12   appropriate remedies for breaches of contracts involving speech by ensuring that claims with

13   the requisite minimal merit may proceed."  *Id*. at 712.

14   It is to the merits prong that this court now turns.

15   **B.    "Probability of Prevailing"**

16   Once a threshold showing has been made that the challenged claims arise from protected

17   activity, then the burden shifts to the party asserting the claims to demonstrate a probability of

18   prevailing – that is, "that the complaint is both legally sufficient and supported by a sufficient

19   prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the

20   [party asserting the claims] is credited."  *Navellier*, 52 P.3d at 708 (internal quotations and

21   citations omitted).  The County has submitted the declaration of its counsel, as well as a number

22   of documents, to support its contentions about the validity and enforceability of the 2004

23   Settlement Agreement.  As briefed by the parties, however, the resolution of the instant motion

24   turns on whether, under Ninth Circuit law, the 2004 Settlement Agreement may be enforced to

25   bar McLean from bringing the instant qui tam lawsuit in the first instance.

26   In the Ninth Circuit, a prefiling release of qui tam claims generally cannot be enforced

27   to bar a subsequent qui tam action where the release was entered into without the government's

28   knowledge or consent.  *United States ex rel Green v. Northrup Corp.*, 59 F.3d 953 (9th Cir.

**United States District Court**
For the Northern District of California

1   1995).  In *Green*, the court examined whether a release agreement, executed by a former

2   employee to settle his employment termination dispute, could be enforced to bar that employee

3   from later filing a qui tam action against his former employer.  There, the government only

4   learned of the alleged fraud because of the filing of the qui tam action, and it did not know of or

5   consent to the parties' prior release.  The Ninth Circuit held that, even assuming the qui tam

6   claims were encompassed by the earlier release, the release agreement could not be enforced to

7   preclude the qui tam claims.  It reasoned that enforcing the release would substantially

8   undermine the central purpose of the False Claims Act of "'encourag[ing] insiders privy to a

9   fraud on the government to blow the whistle on the crime.'"  *Id*. at 963 (quoting *Wang v. FMC*

10  *Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992)).

11         The Ninth Circuit subsequently set out an exception to the general rule stated in *Green*.

12  *See United States ex rel Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230 (9th Cir. 1997).  In

13  *Hall*, both Hall (the relator-employee) and Teledyne (his former employer) notified the

14  government (i.e., the Nuclear Regulatory Commission ("NRC")) of Hall's complaints

15  concerning alleged defects in Teledyne's manufacturing process for sheaths for nuclear fuel

16  rods.  The NRC investigated Hall's charges and determined that the sheaths were in accordance

17  with customer requirements.  While the NRC's investigation was pending, Hall sued Teledyne

18  in state court, claiming that he was wrongfully terminated for notifying the NRC of his concerns

19  about Teledyne's allegedly defective sheaths.  He subsequently executed a broadly worded

20  general release as part of the settlement of that action.  Neither Hall nor Teledyne notified the

21  government about Hall's state court lawsuit or their release agreement.  *Id*. at 231-32.  The

22  Ninth Circuit nevertheless held that the release was enforceable to bar Hall's subsequent qui

23  tam action against Teledyne.  Notwithstanding that the government did not know of or consent

24  to the parties' prior release, the court reasoned that the concerns underlying *Green* were not

25  implicated because the government "had full knowledge of the plaintiff's charges and had

26  investigated them before Hall and Teledyne settled."  *Id.* at 230.

27         In the instant case, McLean argues that *Green* controls.  She has submitted the

28  declaration of the attorney who represented her in her previous lawsuits against the County.  In

9

United States District Court

For the Northern District of California

1   that declaration, her counsel attests that "[n]either the United States, nor the State of California

2   were parties to [the 2004 Settlement Agreement], nor did they participate in the negotiation

3   thereof in any way, shape or form."  (Powell Decl., ¶ 4).  As such, she contends that the release

4   cannot be enforced to bar the instant action and that the County cannot meet its burden on the

5   merits prong of the anti-SLAPP analysis with respect to its counterclaims.

6          The County argues that the relevant inquiry is not whether the government knew about

7   or consented to the prior release.  Rather, it contends that the key question is whether the

8   government knew about McLean's allegations of fraud and had an opportunity to investigate

9   them before the release was executed.  Indeed, as discussed above, *Hall* so indicates.  Here, the

10  County points out that McLean says nothing about whether she informed the federal or state

11  governments of the alleged fraud before the execution of the 2004 Settlement Agreement.  The

12  County has also submitted documentation indicating that it is attempting to obtain information

13  necessary to make this determination, but that its requests are still being processed, and no

14  information may be forthcoming for several weeks.

15         Under these circumstances, and on the record presented, it is unclear whether the instant

16  case falls within the general rule announced in *Green* or whether it might fall under the

17  exception stated in *Hall*.  As such, the court cannot say that the County's counterclaims lack

18  even minimal merit such that they must be stricken now.  Accordingly, McLean's motion to

19  strike will be denied.

20                                    **III.  ORDER**

21         Based on the foregoing, IT IS ORDERED THAT McLean's motion to strike the

22  County's counterclaims is DENIED.

23  Dated:   July 25, 2006

24  _____

25  HOWARD R. LLOYD
    UNITED STATES MAGISTRATE JUDGE

26

27

28

1

**5:05-cv-1962 Notice will be electronically mailed to:**

2

Melissa R. Kiniyalocts melissa.kiniyalocts@cco.co.scl.ca.us

3

Douglas A Linde dal@lindelaw.net, ela@lindelaw.net

4

Sara McLean sara.mclean@usdoj.gov

5

Sara Winslow sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

6

**Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program**.

7

8

**Courtesy copy will be mailed to**:

9

Julia Clayton
Deputy Attorney General

10

California Attorney General's Office
455 Golden Gate Avenue, Suite 11000

11

San Francisco, CA 94102-7004

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**United States District Court**
For the Northern District of California