**United States District Court**
For the Northern District of California

**\*E-FILED 4/30/2008\***

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES *ex rel*. DONNA M. McLEAN and THE STATE OF CALIFORNIA *ex rel* DONNA M. McLEAN,<br><br>Plaintiffs,<br>v.<br><br>THE COUNTY OF SANTA CLARA, et al.,<br><br>Defendants.<br>———————————————————/<br><br>COUNTY OF SANTA CLARA,<br><br>Counter-claimant,<br>v.<br><br>DONNA M. McLEAN and DOES 1-100,<br><br>Counter-defendants.<br>———————————————————/ | No. C05-01962 HRL<br><br>**ORDER (1) DENYING RELATOR'S MOTION TO DISMISS FOR LACK OF JURISDICTION; AND (2) GRANTING RELATOR'S MOTION FOR SUMMARY JUDGMENT RE COUNTY OF SANTA CLARA'S COUNTERCLAIMS**<br><br>**[Re: Docket No. 117, 120]** |

Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), relator Donna McLean moves to dismiss the counterclaims filed by defendant Santa Clara County ("County"). In the alternative, she seeks summary judgment. The County opposes the motion. Upon consideration of the papers filed by the parties, as well as the arguments presented at the April 22, 2008 hearing, this court (a) denies McLean's motion to dismiss for lack of jurisdiction and (b) grants her motion for summary judgment.

United States District Court

For the Northern District of California

### I. BACKGROUND

On May 12, 2005, McLean filed this *qui tam* action under seal pursuant to the federal False Claims Act (31 U.S.C. § 3729, *et seq.*) and the California False Claims Act (Govt. Code § 12651, *et seq.*). She claims that there is a pattern of fraud and corruption in the Santa Clara County Department of Children and Family Services. In essence, the complaint alleges that defendants have invented fictional children for the purpose of overbilling the state and federal governments. On February 27, 2006, following their investigation into the allegations, the United States and the State of California declined to intervene in this action. This court subsequently lifted the seal on the complaint and ordered that it be served upon the defendants. Several defendants, including the County, answered the complaint. The County also filed several counterclaims against McLean for breach of contract, breach of the implied covenant of good faith and fair dealing and for declaratory relief.

Before McLean filed the instant *qui tam* action, she (and several members of her family) were enveloped in three separate lawsuits they filed against the County and some of its employees (a couple of whom are also named defendants in the instant action). Two of those prior lawsuits were filed in this court; the other action was filed in Santa Clara County Superior Court. Briefly stated, those earlier lawsuits alleged violation of constitutional rights, fraud, negligence and intentional infliction of emotional distress in connection with the removal of McLean's children from her home and events which allegedly occurred during the juvenile dependency proceedings involving McLean's children.[1]

In 2004, the parties executed a settlement agreement ("2004 Settlement Agreement") in which they agreed to resolve those three prior lawsuits.[2] The parties agreed to release any and all claims that they may have against one another and further agreed that:

---

[1]    McLean requests judicial notice of the pleadings filed in her other lawsuits against the County. The court properly may take notice of such records, *see* Fed.R.Evid. 201(b), and her request is granted. The court takes notice of these records, not as to the truth of the contents or any party's assertion as to what the contents mean, but rather as to the existence and authenticity of the documents, what has been represented, what has been decided and the status of certain proceedings at a given time as reflected in the documents.

[2]    At the time the 2004 Settlement Agreement was executed, McLean was known as Donna Fryer.

**United States District Court**

For the Northern District of California

1        •     "the term 'any and all claims' shall be interpreted liberally to
2              preclude any further disputes, litigation, or controversy between
             the parties";

3        •     "they will forever refrain from instituting, prosecuting, maintaining,
             proceeding on, assisting or providing assistance or advising to be
4              commenced against any Released Party any action or proceeding that
             arises out of, or is or may be, in whole or in part, based upon, related
5              to, or connected with the subject matter of this Agreement"; and

6        •     "the release contained in this Agreement is a complete defense to any
             action or other proceeding against any Released Party existing at the
7              present time or in the future arising from the subject matter of this
             Agreement."

8

9 (*See* Docket No. 18, (Counterclaim Ex. A at pp. 6-7)). Additionally, the parties agreed to a

10 "hold harmless" clause which provides:

11             The Fryer Plaintiffs agree to defend, indemnify, and hold harmless
       the County Defendant Released Parties from any and all known claims,
12        demands, causes of action, expenses, losses, liabilities, and damage of any
       kind or character, including attorneys' fees and court costs arising out of or
13        in any way connected with the Actions or other proceedings brought by or
       prosecuted by or for the benefit or on the initiative of any Fryer Plaintiff
14        based upon the subject matter of this Agreement and, in any such action, this
       Agreement may be pleaded by the County Defendant Released Parties as a
15        complete defense or asserted by way of cross-complaint, counter claim or
       cross claim.

16

17 (*Id*. at p. 8).

18        In its counterclaims, the County contends that McLean (1) breached the 2004 Settlement

19 Agreement by filing the instant *qui tam* action and (2) induced the County to enter the 2004

20 Settlement Agreement by falsely agreeing to release the County and its employees from all

21 liability for future actions. The County seeks a declaration that McLean breached the 2004

22 Settlement Agreement and requests damages, as well as its fees and costs.

23        McLean previously moved to strike the County's counterclaims pursuant to California's

24 anti-SLAPP statute, Cal. Code Civ. Proc. § 425.16. That motion was denied.

25        McLean now moves to dismiss the County's counterclaims for lack of jurisdiction under

26 Fed. R. Civ. P. 12(b)(1) and for failure to state a claim for relief under Fed.R.Civ.P. 12(b)(6).

27 Alternatively, she seeks summary judgment.

28

United States District Court

For the Northern District of California

## II.  DISCUSSION

**A.      Motion to Dismiss for Lack of Subject Matter Jurisdiction (Fed.R.Civ.P. 12(b)(1)**

McLean seems to contend that the County's counterclaims are not properly before this court because they purportedly seek to enforce the terms of certain state juvenile court orders. Relatedly, she argues that, because the state juvenile court orders concern domestic relations issues, the counterclaims fall within the domestic relations exception to federal jurisdiction.  *See Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992) (The domestic relations exception "divests the federal courts of power to issue divorce, alimony and child custody decrees."); *see also Coats v. Woods*, 819 F.2d 236, 237 (9th Cir. 1987) ("federal courts traditionally decline to exercise jurisdiction in domestic relations cases when the core issue involves the status of parent and child or husband and wife.").

However, McLean misapprehends the nature of the County's counterclaims.  A plain reading of those counterclaims indicate that the County is not seeking to enforce any state court orders, but rather, the terms of the 2004 Settlement Agreement.  Its claim for damages is based upon McLean's alleged breach of that contract.  Inasmuch as the County contends that the instant *qui tam* action is barred by that agreement, this court concludes that its counterclaims properly are before this court and that this court has jurisdiction over them.  *See* Fed.R.Civ.P. 13(a); 28 U.S.C. § 1367(a).  Accordingly, McLean's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

**B.      Motion for Summary Judgment**

Both parties have submitted matters outside the pleadings for the court's consideration, and they agree that McLean's alternative motion to dismiss (styled as one brought pursuant to Fed. R. Civ. P. 12(b)(6)) properly may be treated as one for summary judgment under Fed. R. Civ. P. 56.

A motion for summary judgment should be granted if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  The moving party bears the initial burden of informing the court of the basis for the motion, and identifying portions of

United States District Court

For the Northern District of California

1    the pleadings, depositions, answers to interrogatories, admissions, or affidavits which

2    demonstrate the absence of a triable issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S.

3    317, 323 (1986). In order to meet its burden, "the moving party must either produce evidence

4    negating an essential element of the nonmoving party's claim or defense or show that the

5    nonmoving party does not have enough evidence of an essential element to carry its ultimate

6    burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Companies, Inc.*,

7    210 F.3d 1099, 1102 (9th Cir. 2000).

8       If the moving party meets its initial burden, the burden shifts to the non-moving party to

9    produce evidence supporting its claims or defenses. *See* FED. R. CIV. P. 56(e)(2); *Nissan Fire &*

10   *Marine Ins. Co., Ltd.*, 210 F.3d at 1102. The non-moving party may not rest upon mere

11   allegations or denials of the adverse party's evidence, but instead must produce admissible

12   evidence that shows there is a genuine issue of material fact for trial. *See id.* A genuine issue

13   of fact is one that could reasonably be resolved in favor of either party. A dispute is "material"

14   only if it could affect the outcome of the suit under the governing law. *Anderson*, 477 U.S. at

15   248-49.

16      "When the nonmoving party has the burden of proof at trial, the moving party need only

17   point out 'that there is an absence of evidence to support the nonmoving party's case.'"

18   *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting *Celotex Corp.,* 477 U.S. at

19   325). Once the moving party meets this burden, the nonmoving party may not rest upon mere

20   allegations or denials, but must present evidence sufficient to demonstrate that there is a

21   genuine issue for trial. *Id*.

22      Here, there is no dispute as to material facts. The only question before the court is

23   whether, as a matter of law, the 2004 Settlement Agreement must be enforced to preclude

24   McLean from pursuing the instant *qui tam* action.

25      In the Ninth Circuit, a prefiling release of *qui tam* claims generally cannot be enforced

26   to bar a subsequent *qui tam* action where the release was entered into without the government's

27   knowledge or consent. *United States ex rel Green v. Northrup Corp.*, 59 F.3d 953 (9th Cir.

28   1995). In *Green*, the court examined whether a release agreement, executed by a former

5

**United States District Court**
For the Northern District of California

1   employee to settle his employment termination dispute, could be enforced to bar that employee

2   from later filing a *qui tam* action against his former employer.  There, the government only

3   learned of the alleged fraud because of the filing of the *qui tam* action, and it did not know of or

4   consent to the parties' prior release.  The Ninth Circuit held that, even assuming the *qui tam*

5   claims were encompassed by the earlier release, the release agreement could not be enforced to

6   preclude the *qui tam* claims.  It reasoned that enforcing the release would substantially

7   undermine the central purpose of the False Claims Act of "'encourag[ing] insiders privy to a

8   fraud on the government to blow the whistle on the crime.'"  *Id*. at 963 (quoting *Wang v. FMC*

9   *Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992)).

10          The Ninth Circuit subsequently set out an exception to the general rule stated in *Green*.

11  *See United States ex rel Hall v. Teledyne Wah Chang Albany*, 104 F.3d 230 (9th Cir. 1997).  In

12  *Hall*, both Hall (the relator-employee) and Teledyne (his former employer) notified the

13  government (i.e., the Nuclear Regulatory Commission ("NRC")) of Hall's complaints

14  concerning alleged defects in Teledyne's manufacturing process for sheaths for nuclear fuel

15  rods.  The NRC investigated Hall's charges and determined that the sheaths were in accordance

16  with customer requirements.  While the NRC's investigation was pending, Hall sued Teledyne

17  in state court, claiming that he was wrongfully terminated for notifying the NRC of his concerns

18  about Teledyne's allegedly defective sheaths.  He subsequently executed a broadly worded

19  general release as part of the settlement of that action.  Neither Hall nor Teledyne notified the

20  government about Hall's state court lawsuit or their release agreement.  *Id*. at 231-32.  The

21  Ninth Circuit nevertheless held that the release was enforceable to bar Hall's subsequent *qui*

22  *tam* action against Teledyne.  Notwithstanding that the government did not know of or consent

23  to the parties' prior release, the court reasoned that the concerns underlying *Green* were not

24  implicated because the government "had full knowledge of the plaintiff's charges and had

25  investigated them before Hall and Teledyne settled."  *Id.* at 230.

26          The question whether the instant action falls within *Green* or *Hall* was previously

27  confronted by this court on McLean's anti-SLAPP motion to strike.  As noted above, that

28  motion was denied.  At that time, the allegations of the complaint had recently been unsealed

United States District Court

For the Northern District of California

1    and discovery was just underway.  One of McLean's former attorneys submitted a declaration

2    attesting that neither the state nor federal governments were aware of her 2004 Settlement

3    Agreement with the County.  However, the County indicated that it was in the process of

4    obtaining information on the key question whether the federal or state governments were aware

5    of the alleged fraud and had an opportunity to investigate it before the 2004 Settlement

6    Agreement was executed.  (*See* Docket No. 44).

7            McLean maintains that *Green* controls and that the exception stated in *Hall* does not

8    apply.  She attests that she did not notify either the state or federal governments about the fraud

9    alleged here before the filing of the instant *qui tam* action.  (*See* McLean Decl., ¶¶ 5-6).

10   Additionally, she has submitted a copy of a letter from the California Attorney General's Office

11   which indicates that the first communication the state received "pertaining to certain complaints

12   and allegations made by Donna McLean" was a May 14, 2005 letter enclosing a copy of the

13   instant *qui tam* complaint and enclosures.  (*See id.*, ¶ 5, Ex. A).  McLean has also submitted

14   copies of her requests for admission, seeking the County's admissions that neither the federal

15   nor state governments knew of her allegations prior to the execution of the 2004 Settlement

16   Agreement.  (*See* Dresser Reply Decl., Ex. 1).  She has not submitted copies of the County's

17   actual responses to those requests, but McLean's counsel attests that "[t]he response by the

18   County is that it knew of no facts, no documents, and only Ms. McLean to support is denial."

19   (Dresser Reply Decl., ¶3).  Additionally, McLean points out that the County's responses to her

20   first set of interrogatories identifies only McLean as the source of its information as to the

21   alleged fraud.  (*See* Docket No. 130 (Affidavit of Melissa Kiniyalocts in Support of Defendants'

22   Opposition to Motion to Compel, Ex. 2)).

23           The County does not present any evidence to the contrary.  Despite arguments it asserted

24   on McLean's prior anti-SLAPP motion to strike, the County now contends that it does not

25   matter whether the government was aware of McLean's allegations before she filed suit.  Here,

26   it claims that the key factor is whether the relator is an "insider privy to fraud."  It argues that,

27   because McLean is not a state or federal government employee, she is not an "insider privy to

28

7

United States District Court

For the Northern District of California

1   fraud" and the principles underlying *Green* and *Hall* are therefore not implicated here.  This

2   court disagrees.

3          The *qui tam* paradigm is that of an employee "blowing the whistle" on her employer.

4   But examination of *Green* and *Hall* indicate that the determinative factors are whether the

5   government knew of the relator's allegations and had an opportunity to investigate them before

6   a release was executed.  The False Claims Act "is premised on the view that combating

7   government fraud requires incentives for those with relevant information of fraud to come

8   forward.  Preservation of the incentive effect in the prefiling period, therefore, clearly is a

9   concern infused with the public interest."  *Green*, 59 F.3d at 967.  Thus, in determining whether

10  pre-filing releases should be enforced to bar such actions, the court's "focus must be on what

11  impact the release will have on the incentive effect Congress intended to create and the

12  importance of that incentive effect in achieving the [False Claims Act's] goal of detecting and

13  deterring fraud on the government."  *Id*. at 965.  The Ninth Circuit held that "permitting a

14  prefiling release when the government has neither been informed of, nor consented to, the

15  release would undermine this incentive, and therefore, frustrate one of the central objectives of

16  the [FCA]."  *Id*. at 965.  *Cf. Hall*, 104 F.3d at 232-33 (concluding that *Green*'s rationale did not

17  apply where the government had full knowledge of the relator's charges and investigated them

18  before a release was signed).  In the instant case, there is no evidence suggesting that the state

19  or federal governments knew of McLean's allegations and had an opportunity to investigate

20  them before the 2004 Settlement Agreement was executed.

21         Moreover, this court is unpersuaded by the County's supposition that there may be any

22  number of other potential relators who could prosecute a valid *qui tam* claim on the

23  government's behalf.  *See Green*, 59 F.3d at 967 ("As a general matter, however, we think that

24  hypothesizing the existence of other employees who possess relevant information and are

25  willing to come forward is far too fragile a basis for enforcing the Release.  There is, of course,

26  no guarantee that such persons exist.").

27         The upshot of the County's arguments and all of its proffered evidence is that McLean's

28  allegations lack merit.  The County maintains that the instant lawsuit is based on nothing more

8

**United States District Court**
For the Northern District of California

1   than McLean's misunderstanding of how the County receives state and federal funding for child

2   welfare services.  It remains to be seen whether McLean will be able to prove her claims.  The

3   thrust of the counterclaims and the question presented by the instant motion is not whether

4   McLean is pursuing meritorious claims, but whether she is pursuing released claims.  In view of

5   the record presented and the Ninth Circuit's rulings in *Green* and *Hall*, this court is unpersuaded

6   that the 2004 Settlement Agreement should be enforced so as to preclude McLean from

7   proceeding with this action on behalf of the federal and state governments.

### III.  ORDER

9       Based on the foregoing, IT IS ORDERED THAT:

10      1.      McLean's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) is denied.

11      2.      McLean's motion for summary judgment as to the County's counterclaims is

12  granted.

13  Dated:     April 30, 2008

14  _____
    HOWARD R. LLOYD
    UNITED STATES MAGISTRATE JUDGE

9

**United States District Court**
For the Northern District of California

1     **5:05-cv-1962 Notice will be electronically mailed to:**

2     Virginia Stewart Alspaugh Virginia_Alspaugh@cmwlaw.net, Linda_Knobbe@cmwlaw.net, TheAlspaughs@cox.net

3

4     Orley Brandt Caudill , Jr brandt_caudill@cmwlaw.net, christopher_zopatti@cmwlaw.net

    William C. Dresser loofwcd@aol.com

5

6     Melissa R. Kiniyalocts melissa.kiniyalocts@cco.co.scl.ca.us

7     Sara McLean sara.mclean@usdoj.gov

8     Michael Millen MikeMillen@aol.com

9     Richard Augustus Swenson rsloofwcd@aol.com

10     Joan Eve Trimble joan_trimble@cmwlaw.net, patricia_inabnet@cmwlaw.net

11     Sara Winslow sara.winslow@usdoj.gov, kathy.terry@usdoj.gov

12     **Counsel are responsible for distributing copies of this document to co-counsel who have not registered for e-filing under the court's CM/ECF program.**

13

14     **5:05-cv-1962 Notice will be delivered by other means to:**

15     Julia Clayton
    Deputy Attorney General
16     California Attorney General's Office
    455 Golden Gate Avenue, Suite 11000
17     San Francisco, CA 94102-7004

18

19

20

21

22

23

24

25

26

27

28